U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**



_____

**Signed January 25, 2007**                          **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| COMMONWEALTH SECURITIES CORP., | § | CASE NO. 06-30746-SGJ-7 |
| | § | |
| ALLEGED DEBTOR | § | |
| | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING RULE 9011 SANCTIONS MOTION FILED BY ALLEGED DEBTOR COMMONWEALTH SECURITIES CORP.[1]

On November 22, 2006, Commonwealth Securities Corp. ("Commonwealth"), the alleged debtor in the above-referenced involuntary bankruptcy case, filed a Motion for Sanctions Pursuant to Bankruptcy Rule 9011 ("Rule 9011 Motion") [Docket Entry #85], seeking monetary sanctions from the petitioning creditors who prosecuted the above-referenced case, in an amount

_____

[1] In this document, the court uses the terms "Rule 9011" and "Rule 11" interchangeably. Rule 9011, of course, refers to Rule 9011 of the Federal Rule of Bankruptcy Procedure, which was modeled after and is almost identical to Rule 11 of the Federal Rules of Civil Procedure. Rule 9011 only slightly differs from Rule 11, in that it addresses certain papers and events unique to bankruptcy cases.

"no less than the actual legal fees and costs incurred by [Commonwealth]" as well as "consequential and punitive damages" suffered by Commonwealth as a result of the petitioning creditors' conduct. On January 11, 2007, the court held a hearing regarding the Rule 9011 Motion. Based on a review of the Rule 9011 Motion and all responses, replies and supplements relating thereto, the relevant case law, the arguments of counsel, and the court's taking of judicial notice of certain pleadings and hearings during this case (as later referenced herein), the court declines to grant any relief pursuant to the Rule 9011 Motion. This ruling is without prejudice to Commonwealth's separate, pending motion seeking Section 303(i) damages as to a limited group of petitioning creditors [Docket Entry # 86], which is set for hearing on February 27, 2007 at 9:30 a.m.

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and 9014.[2] The court reserves the right to supplement these findings and conclusions, as it deems appropriate.

---

[2] The court makes these findings and conclusions while noting that the Fifth Circuit has rejected a rule that would impose upon trial courts "the onerous and often time-consuming burden of making specific findings and conclusions in all Rule 11 cases." *Thomas v. Capital Security Servs., Inc.,* 836 F.2d 866 (5th Cir. 1988). At the same time, this court recognizes that when the basis and justification for a Rule 11 decision may not be "readily discernible on the record, an adequate explanation by the trial court for the decision will be necessary." *Id.*

## Background Facts

1.  This contested matter constitutes a core proceeding over which this court has jurisdiction to enter a final order, pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O).

2.  The above-referenced involuntary case has a tumultuous history, involving an almost 10-month "gap" period that was marked by rancorous discovery disputes and other contentious hearings.

3.  The case was commenced on February 16, 2006, by at least eight alleged creditors of Commonwealth. At various times subsequent, certain additional alleged creditors joined in the involuntary petition, pursuant to 11 U.S.C. § 303(c). All such original-filing and later-joining creditors (more than a dozen in total) will hereinafter collectively be referred to as the "Petitioning Creditors."[3] *See id.*

4.  On March 16, 2006, a response in opposition to the involuntary petition was filed, purportedly on behalf of Commonwealth, by a Ronald Poock, the President and a 50% shareholder of Commonwealth. There was ultimately no ruling regarding whether it was appropriate to issue an order for relief

---

[3] The original Petitioning Creditors were: DEMES 93, Ltd.; Motocross Properties, Ltd.; GPAD Associates, Ltd.; Braided Main Properties, Ltd.; Jason Harshman; Michael A. Jordan, II, as Trustee for certain trusts; Team Yamaha, Inc.; Texas Executive Management Corp. Later joining Petitioning Creditors were: C. Richard Smith, P.C.; Danny Merrifield; Camland, Ltd.; James Luckey; MSC-1, Ltd.; and Happy Horse Acres Riding School, Inc.

in the involuntary bankruptcy case. Trial was set on the involuntary petition for December 11, 2006 (after at least one requested continuance was granted). However, the trial never occurred for reasons that are explained below.

5. While there was no trial on the merits of the involuntary petition, there were numerous hearings in this case, as previously alluded to, including hearings on a motion for relief from stay, requested injunctive relief, a request for a "gap" trustee, discovery disputes, and regarding whether Michael Jordan, the other 50% shareholder of the alleged debtor, had corporate authority to consent to the involuntary petition. Mr. Jordan, as it turns out, was the Trustee of four or five Trusts that were Petitioning Creditors.

6. It appeared to the court, from the record developed at the various hearings, that this case was essentially just the latest chapter in a long running corporate divorce—for lack of a better term—between the two 50% shareholders (Messrs. Poock and Jordan), who seem to have irreconcilable differences and can no longer get along.

7. Specifically, Messrs. Poock and Jordan fell into disagreements a few years ago regarding the management and operation of Commonwealth. They were involved in contentious state court litigation regarding these issues, just prior to the bankruptcy filing. Specifically, Mr. Jordan initiated a state

-4-

court receivership in December 2004.  With that still unresolved (with an independent accounting undertaken, but no receiver yet appointed), and arguably in violation of an Agreed Order that the two shareholders entered into in the state court proceedings,[4] Mr. Jordan, on behalf of various Trusts he controls, and certain other alleged creditors of Commonwealth, filed the involuntary bankruptcy petition against Commonwealth in February 2006.

8.  Mr. Jordan was by far the most vocal representative of the Petitioning Creditors during the pendency of the involuntary case (in fact, he was really the only visible one attending hearings, except for one hearing at which the court ordered all Petitioning Creditors to appear; *see* ¶ 9 and n.5, below).

9.  On October 12, 2006, this court, in utter exasperation, and after observing that the case had become "very expensive, contentious, and taxing on the Court's time for the Petitioning Creditors and Alleged Debtor to litigate two seemingly simple issues" (*i.e.,* whether (a) the Petitioning Creditors, in fact, had unsecured claims that were of the threshold amount and not contingent or the subject of bona fide disputes; and (b) the

---

[4] Messrs. Poock and Jordan entered into an Agreed Order in the state court proceedings on May 9, 2005, that provided that they would share the cost of an accountant who would, among other things, prepare a current statement of assets and liabilities of Commonwealth, and Messrs. Poock and Jordan would agree as to the distribution and payment of the assets and liabilities of Commonwealth.  If Messrs. Poock and Jordan could not agree as to such distribution, they agreed that the state court would appoint a receiver.  *See* Docket Entry # 6 in this case (Attachment #1 thereto).

alleged debtor was generally not paying its undisputed debts as such debts became due), entered an Order Requiring Petitioning Creditors to File Bond Pursuant to 11 U.S.C. § 303(e) (hereinafter "October 12th Bond Order") [Docket Entry # 76].[5]

10.  The October 12th Bond Order provided, in pertinent part, that:  (a) the Petitioning Creditors would be required, by October 20, 2006, to post a $50,000 bond, pursuant to 11 U.S.C. § 303(e), as a condition to continuing to pursue the involuntary petition, with the cost of the bond to be borne *pro rata* by the Petitioning Creditors (in accordance with a formula defined in the order); (b) that the Petitioning Creditors could, by the same date, "opt out" of their prosecution of the involuntary case (*i.e.,* withdraw their participation or joinder in the involuntary petition), and such act would relieve them of not only the requirement of sharing in/posting the bond, but would also relieve all Petitioning Creditors *except* for Michael Jordan from any potential damages pursuant to 11 U.S.C. § 303(i); and (c) Michael Jordan (in his individual capacity or as Trustee of various Trusts that purported to be creditors of Commonwealth),

---

[5] The October 12th Bond Order was a follow-up order, entered after an October 11, 2006 hearing in connection with the court's Order to Appear and Show Cause Whether All Petitioning Creditors Should be Required to File Bond, entered September 28, 2006 ("September Show Cause Order") [Docket Entry # 68].  The September Show Cause Order, served on all Petitioning Creditors, notified Petitioning Creditors that the court was considering requiring the posting of a bond, pursuant to 11 U.S.C. § 303(e), and required the Petitioning Creditors to appear on October 11, 2006 in connection with such matter.

in all events, would remain potentially liable for damages pursuant to 11 U.S.C. § 303(i).

11. Two notable events occurred after entry of the October 12th Bond Order. First, *all* Petitioning Creditors took their marbles and went home—*i.e.,* they "opted out," choosing not to post a bond and to no longer prosecute the involuntary case (this is the reason there was never a trial or ruling on the merits of the involuntary petition). Second, Commonwealth filed a motion for modification or reconsideration of the October 12th Bond Order [Docket Entry # 78]. With regard to the latter, Commonwealth (seemingly not content with having won their war—*i.e.,* with the inevitable dismissal of the involuntary case) expressed dismay at the prospect of not being able to seek Section 303(i) damages against each and every Petitioning Creditor. Commonwealth urged that it should be able to seek damages against *all* Petitioning Creditors, since it had not consented to the "opt out" arrangement and had not waived the right to damages.

12. On October 27, 2006, the court entered its Order Denying Motion to Modify and/or Reconsider October 12th Bond Order [Docket Entry # 81]. In such order, the court noted that Section 303(i) provides that the court *may*—in the context of a dismissed involuntary petition and under certain defined circumstances—grant judgment against petitioners and in favor of

a debtor for damages associated with the involuntary filing and,
thus, the court has *discretion* to decide whether, and against
whom, to assess damages.  The court indicated that it had formed
the impression throughout the hearings and from the overall
record in this case that the involuntary case was essentially a
two-party dispute,[6] with most or all of the Petitioning Creditors
acting at the direction or persuasion of Michael Jordan.[7]
Therefore, the court, in its discretion (and consistent with
Section 303(i)), believed it was appropriate, after hearing
evidence at and prior to the October 11, 2006 hearing, to allow

---

[6]A bankruptcy court may, in deciding whether to award Section
303(i) damages, take judicial notice of prior proceedings in the case.
*See In re Hentges*, 351 B.R. 758, 763 (Bankr. N.D. Okla. 2006).
Moreover, generally courts can find improper the use of the bankruptcy
mechanism in cases of two-faction disputes over control of an entity.
*Id.* at 771 (citing *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.)*,
61 B.R. 614, 619 (9th Cir. B.A.P. 1986) (filing of bankruptcy by one
faction of owners/directors who were dissatisfied with a state court
dissolution proceeding was improper use of bankruptcy)).

[7]Of the eight Petitioning Creditors who filed the original
involuntary petition, Michael Jordan was signatory for three of them:
Texas Executive Management Corp.; Braided Mane Properties, Ltd.; and
"Michael Jordan, Trustee."  However, "Michael Jordan, Trustee"
apparently subsumed four or five Trusts—thus four or five separate
Petitioning Creditors.  Thus, Michael Jordan would appear to have
signed the involuntary petition on behalf of six or seven of the
original Petitioning Creditors.  The court also notes that a Mr. Jason
Harshman was also the signatory for three Petitioning Creditors:  for
himself individually; Motocross Properties, Ltd.; and Team Yamaha,
Inc.  At the hearing on October 11, 2006, Jason Harshman was present
(as required by the court) and appeared to be taking instructions even
regarding his individual claim from Michael Jordan.  *See* Transcript of
October 11, 2006 hearing [Docket Entry #117], at p. 108, lines 12-22
(in response to counsel's and the court's observation that Mr. Jordan
was instructing Mr. Harshman regarding how to answer questions about
Mr. Harshman's claim against Commonwealth, the court stated, "the
record will reflect what appears to be coaching from you, Mr.
Jordan").

all of the Petitioning Creditors other than Michael Jordan (individually and as Trustee) to simply "walk away," if they so chose, without risk. Commonwealth did not appeal this order.

13. On December 8, 2006, this court, after a November 27, 2006 hearing on notice to all Petitioning Creditors, entered an Order of Dismissal, dismissing the involuntary case for want of prosecution, without prejudice to and with reservation of the court's jurisdiction and authority to consider Section 303(i) damages, as limited by the October 12th Bond Order.

14. Meanwhile, Commonwealth (on November 22, 2006) had filed its Rule 9011 Motion, pursuant to which it was seeking damages against *all* Petitioning Creditors. The court learned about the Rule 9011 Motion at the November 27, 2006 hearing mentioned in the preceding paragraph. The Petitioning Creditors expressed concern at such hearing (and in later pleadings) that the Rule 9011 Motion violated the spirit and intent of the court's October 12th Bond Order, noting that they had acted in reliance upon the safety net of that order in giving up substantive rights (*i.e.,* in "opting out" of the involuntary petition). The court had similar concerns and had, frankly, never even considered Rule 9011 sanctions as a possibility in entering the October 12th Bond Order (or in denying the request for modification or reconsideration of such order on October 27, 2006). Indeed, Commonwealth had never previewed the possibility

-9-

of asking for Rule 9011 sanctions prior to filing the Rule 9011
Motion on November 22, 2006.

16. Commonwealth, once again, seemingly not content having
won their war (*i.e.,* dismissal of the case, with the retained
ability to seek Section 303(i) damages from the central
protagonist, Michael Jordan) suggested to the court and
Petitioning Creditors at the November 27, 2006 hearing, that it
would be perfectly fine if the court set aside the October 12th
Bond Order entirely, permitting the Petitioning Creditors to "opt
back in" the involuntary petition. *See also* Commonwealth Reply
[Docket Entry #106], p. 20: "Commonwealth again advises the
Court and Petitioning Creditors that it **is still willing to agree
to allow the Petitioning Creditors to 'opt back in.'** This would
place the Petitioning Creditors in the same position that they
were in before the Court entered its October 12, 2006 Order, and
the Petitioning Creditors would not be negatively 'affected' at
all") (emphasis in original).[8] This court was rather
flabbergasted that an alleged debtor and its attorneys—who had
fought an involuntary case "tooth and nail" for ten months—would
advocate for having an involuntary bankruptcy case reinstated,
rather than be deprived of seeking Section 303(i) damages against
certain Petitioning Creditors *whom they had consistently*

---

[8] Commonwealth has taken this same position in two different court
hearings.

*suggested were pawns being controlled by Michael Jordan*–against whom Commonwealth still had the power to seek Section 303(i) damages.[9]

17. In any event, the court entered a subsequent order on December 20, 2006 [Docket Entry # 103], in which the court, upon request of the parties, essentially narrowed the issues for a January 11, 2007 setting on the Rule 9011 Motion, specifying that the court would focus solely, on January 11, 2007, on:

(a) whether the court even had the discretion to consider the Rule 9011 Motion, in light of Section 303(i)— which the court thought might preempt or supplant entirely Bankruptcy Rule 9011 as a mechanism for sanctions in the context of a dismissed

---

[9]Although Commonwealth now takes the position, through the Rule 9011 Motion, that *all* of the Petitioning Creditors should be held accountable because all of their claims were subject to a bona fide dispute and they all knew it, Commonwealth has consistently heretofore taken the position that Mr. Jordan has been the protagonist pulling the strings in this case. For example, at the October 11, 2006 hearing, its counsel argued: "[W]e have stated, both orally in the courtroom and in pleadings filed of record, that we believe that most or all of the Petitioning Creditors are controlled, either directly or indirectly, by Mr. Jordan." Transcript from October 11, 2006 hearing [Docket Entry #117], p.7, lines 15-19. Also, later during the same hearing, Commonwealth's counsel referred to the involuntary case as being "instrumentally initiated" by Mr. Jordan. Transcript from October 11, 2006 hearing [Docket Entry #117], p. 35, line 8. Also, in the Commonwealth Rule 9011 Motion, Commonwealth wrote: "CSC asserts that certain alleged creditors may have allowed themselves to be 'used' by Jordan." Rule 11 Motion [Docket Entry #85], p. 9, ¶ 22. Additionally, in Commonwealth's Reply to Petitioning Creditors' Responses to Motion for Rule 9011 Sanctions, it wrote: "From day one of this proceeding Commonwealth has also contended that the actions of most or all of the Petitioning Creditors with respect to this proceeding were being controlled, directly or indirectly, by the actions of Michael Jordan." Reply [Docket Entry #105], p. 1, ¶ 1. Finally, in a Brief in Support of a Motion to Compel Discovery [Docket Entry # 26], Commonwealth wrote: "A group of Petitioning Creditors (who, upon information and belief, are mostly owned and/or controlled by Michael Jordan . . .)." p. 1, ¶ 1.

involuntary bankruptcy petition;

(b) if preemption by Section 303(i) did not technically apply, whether the court, in equity, *should* consider the Rule 9011 Motion, in light of the court's October 12th Bond Order giving Petitioning Creditors (other than the Michael Jordan Trusts) the opportunity, if they "opted-out" of the involuntary case, to both avoid posting a bond and Section 303(i) damages; and

(c) the court, more generally, wanted to consider any other legal or equitable arguments the parties might have, such as justifiable reliance of the Petitioning Creditors on the October 12th Bond Order, due process arguments generally, and timeliness arguments with regard to the Rule 9011 Motion.

<u>**Conclusions of Law**</u>

**A. Whether Section 303(i) Preempts or Supplants Entirely Bankruptcy Rule 9011 as a Mechanism for Sanctions in the Context of a Dismissed Involuntary Bankruptcy Petition.**

First, with respect to the legal question of whether Section 303(i) supplants Bankruptcy Rule 9011, in the context of a dismissed involuntary petition, and thus whether this court even has discretion to consider the Rule 9011 Motion, the court begins with the basics. Section 303(i) provides that if a bankruptcy court dismisses an involuntary petition, other than on consent of all petitioners and the debtor, the court *may* grant judgment (1) against the petitioners and in favor of the debtor for (a) costs; or (b) a reasonable attorney's fee; or (2) against any particular petitioner that filed the petition in bad faith for any damages proximately caused by such filing or punitive damages. 11 U.S.C. § 303(i). In the Commonwealth case, we are, of course, now within the scope of Section 303(i). In other words, we are in

the context of there being an involuntary bankruptcy petition that was dismissed by the court *other* than upon consent of all petitioners and the debtor. We have a case that was dismissed for *want of prosecution*, because the court put in place a mechanism on October 12, 2006, that encouraged petitioners to consider "opting out" and withdrawing from pursuing the involuntary petition and, indeed, all Petitioning Creditors decided to withdraw and cease prosecuting the involuntary petition. So the court, in the context of a dismissal for want of prosecution, has the discretion to impose a judgment pursuant to Section 303(i). A judgment under Section 303(i) is not by any means mandatory, but rather lies within the sound discretion of the court. *E.g., In re Denver Community Dev. Credit Union,* 2004 WL 2274961, *2 (Bankr. D. Colo. 2004).[10]

This court believes that it has already exercised its discretion *partially* with regard to Section 303(i). When the court entered the October 12th Bond Order, the court preemptively ruled that it would not be imposing any Section 303(i) judgment

---

[10] This court notes that certain courts have concluded that Section 303(i)(1) raises a rebuttable presumption that reasonable fees and costs are authorized. *Higgins v. Vortex Fishing Systems, Inc.,* 379 F.3d 701, 707 (9th Cir. 2004). On the other hand, other courts have taken more of a "totality of the circumstances" approach, with regard to Section 303(i)(1) fee shifting, but with regard to the seeking of consequential and punitive damages under Section 303(i)(2), have applied a presumption of good faith on the part of the petitioners in filing the involuntary bankruptcy petition. *Cadillac by Delorean & Delorean Cadillac, Inc.,* 265 B.R. 574, 581-82 (Bankr. N.D. Ohio 2001).

or damages against any non-Jordan Petitioning Creditors who, by October 20, 2006, opted out, choosing no longer to prosecute the case. The court exercised this discretion, not in an utter vacuum, without considering any evidence. Rather, the court was exercising its discretion based on the evidence adduced at several hearings in this case and by looking at the record in this case. The court believed that this was a two-party dispute, essentially, between Messrs. Poock and Jordan, and the court decided it would consider a motion for a Section 303(i) judgment against Mr. Jordan and/or his Trusts (as Petitioning Creditors) at the end of the day, but the court was essentially exercising its discretion by allowing non-Jordan Petitioning Creditors to walk away and end the bankruptcy fight if they wanted to—and if they made that choice, the court would make the discretionary decision not to impose Section 303(i) damages.[11] The court does not regret that decision, because it had the end result of ending protracted litigation that appeared to be waged in the wrong forum. It ended what appeared to be essentially a two-party corporate governance war in which many of the Petitioning Creditors were becoming casualties of war. In any event, the court exercised its discretion under Section 303(i) as to the non-Jordan Petitioning Creditors by virtue of the October 12th Bond Order. The court reserved discretion to consider at another

---

[11] *See* note 6, supra.

day Section 303(i) damages if and when that request was made as to "Michael Jordan (in his individual capacity or as Trustee of various Trusts)." Commonwealth could have appealed the October 12th Bond Order but it chose not to. Thus, the court's decision regarding against whom the court would consider Section 303(i) damages will stand.

But the question remains whether Commonwealth can seek Bankruptcy Rule 9011 sanctions against the Petitioning Creditors when the court has already exercised discretion and determined that no Section 303(i) damages can be recovered from certain of them. In other words, does Section 303(i) supersede Bankruptcy Rule 9011 in the context of an involuntary petition? Is Bankruptcy Rule 9011 available?

First, what few courts that have been presented with this question have, for the most part, either held, stated in *dicta,* or implied that Rule 9011 and Section 303(i) are not mutually exclusive—that Rule 9011 is technically available and Section 303(i) does not supersede or supplant its availability in an involuntary petition context. *See In re Denver Community Development Credit Union,* 2004 WL 2274961, *5 (Bankr. D. Colo. 2004) (court considered Section 303(i) damages against petitioner as well as Rule 9011 sanctions against petitioner's *attorney); In re Law Center,* 304 B.R. 136 (Bankr. M.D. Pa. 2003)(court awarded reasonable attorneys' fees, expenses, and costs, "under both Rule

9011 and 11 U.S.C. § 303(i)" without discussion of the availability of both remedies); *In re Grossinger,* 268 B.R. 386, 390 (Bankr. S.D.N.Y. 2001)(court, noting that Section 303(i) does not provide for damages or sanctions against a petitioning creditor's *attorney*, imposed Rule 9011 sanctions against the attorney); *In re Kidwell,* 158 B.R. 203, 219 (Bankr. E.D. Ca. 1993)(Rule 9011 sanctions permissible against a petitioning creditor who made misrepresentations, where Section 303(i) did not provide a remedy, since involuntary case had not ultimately been dismissed); *In re Kearney,* 121 B.R. 642, 646 (Bankr. M.D. Fla. 1990)(court imposed Rule 9011 sanctions upon petitioner and his attorney jointly and severally, for their failure to reasonably investigate and determine that there were more than twelve creditors of the alleged debtor, in addition to shifting attorneys fees and costs to the petitioner, pursuant to Section 303(i)); *In re International Mobile Advertising Corp.,* 117 B.R. 154, 158 (Bankr. E.D. Pa. 1990) (although dismissal of involuntary case by consent of alleged debtor and petitioning creditor precluded alleged debtor from seeking Section 303(i) damages, court held that this did not foreclose alleged debtor from seeking Rule 9011 damages against petitioner and his attorney, although court declined to grant such sanctions); *In re Tarasi & Tighe,* 88 B.R. 706, 711 (Bankr. W.D. Pa. 1988) (court imposed sanctions, pursuant to Rule 9011, against an attorney who

was a *pro se* petitioner and also imposed Section 303(i) damages).
*See also Paradise Hotel Corp. v. Bank of Nova Scotia,* 842 F.2d
47, 52 (3d Cir. 1988) (declining to hold that section 303(i)
provided the exclusive remedy for pursuing claims against a
petitioner who allegedly petitioned in bad faith). *But see In re
Cadillac by Delorean & Delorean Cadillac, Inc.,* 265 B.R. 574, 586
(Bankr. N.D. Ohio 2001) (court declined to award sanctions under
Rule 9011, noting that Section 303(i) serves an identical purpose
as Rule 9011 in the involuntary petition context, and because
Section 303(i)—as opposed to the more general Rule 9011—
specifically deals with inappropriate involuntary filings, it is
more appropriate and effective to assess costs and attorney's
fees under 303(i)).  The *Delorean* case suggests that Rule 9011
and Section 303(i) are basically duplicative, even if technically
not mutually exclusive.

However, this court submits that Section 303(i) and
Bankruptcy Rule 9011 are not, at least in theory, duplicative.
In fact, they are really designed to accomplish different
purposes.  As noted by various courts, Section 303(i) is really a
fee shifting statute while Bankruptcy Rule 9011 is not.
*International Mobile,* 117 B.R. at 158 n.1.  So, while with
Section 303(i), the underlying policy purpose is to allow an
alleged debtor to recover its reasonable costs and attorney's
fees, regardless of whether there was bad faith or improper

-17-

purpose (in other words, Section 303(i)(1) creates a statutory exception to the usual "American Rule,"[12] so that the losing involuntary petitioners will pay in the context of an unsuccessful involuntary petition), and while also with Section 303(i)(2), in the event of bad faith, there are potentially consequential and punitive damages that might be imposed, under Rule 9011 in contrast, the policy is *not fee shifting* but to deter wrong doing. With Rule 9011, the Rule 9011 movant has no entitlement to fees or any other particular sanction. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990). Rule 9011 is intended to provide a sanction in an amount that is "sufficient to deter repetition of [improper] conduct [by an actor] or comparable conduct by others similarly situated." *Whitehead v. Food Max of Miss., Inc.,* 332 F.3d 796, 808 (5th Cir. 2003) *cert. denied* by *Minor v. KMart Corp.,* 540 U.S. 1047 (2003). Rule 11 is intended to protect the integrity of legal proceedings and the temples of justice. Moreover, when Rule 9011 has been implicated through the filing of a pleading for improper purpose or that is not grounded in fact or law or a reasonable extension of the law, the court must carefully consider the sanction and impose "the least severe sanction" that would adequately deter a future violation of the Rule. *Thomas v. Capital Security Servs., Inc.,*

---

[12] The so-called "American Rule" regarding attorney's fees has been discussed in such cases as *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975).

836 F.2d 866, 878 (5th Cir. 1988).[13] Thus, it would seem to this court, where you have a statute that allows for pure fee shifting (*i.e.,* petitioners pay), regardless of motive or purpose of the petitioners, and also allows for consequential and punitive damages in the event of a bad faith motive, there is really no purpose in a Rule 9011 Motion (*i.e.,* which would only be about assessing some sanction to deter future improper conduct) except maybe in a case where there is a gap in scope or coverage of Section 303(i). In other words, if Section 303(i) does not apply by its literal terms to a bad actor, then Rule 9011 might be of some utility.

Indeed, by and large, the cases that have addressed whether Section 303(i) and Rule 9011 are mutually exclusive, and have found that they are not, have held that way in the context of there being some actual situation where Section 303(i) otherwise would not apply by its terms, and the court thought there needed to be a mechanism to deter an actor who had culpability in connection with the involuntary case. *E.g., In re K.P. Enter.,*

---

[13] One area in which Rule 9011 and Section 303(i) are identical is that the court has complete discretion in both situations. *Cooter & Gell*, 496 U.S. at 400 ("In directing the district court to impose an 'appropriate' sanction, Rule 11 itself indicates that the district court is empowered to exercise its discretion"); *Thomas,* 836 F.2d at 878 (the district court retains broad discretion in determining the 'appropriate' sanction under the Rule. What is 'appropriate' may be a warm friendly discussion on the record, a hard nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances").

135 B.R. 174, 180 (Bankr. D. Me. 1992) (court noted in *dicta* that Rule 9011 "may be utilized when section 303(i)(2) does not apply, such as where there has been a voluntary dismissal with universal consent or where sanctions against counsel are sought"); *International Mobile,* 117 B.R. 158 (court found that sanctions against the petitioning creditor and its *attorney* were appropriate under Rule 9011); *Grossinger,* 268 B.R. at 390 (court, noting that Section 303(i) does not provide for damages or sanctions against a petitioning creditor's *attorney*, imposed Rule 9011 sanctions against the attorney); *Kidwell,* 158 B.R. at 219 (Rule 9011 sanctions permissible against a petitioning creditor who made misrepresentations, where Section 303(i) did not provide a remedy, since involuntary case had not ultimately been dismissed).

The Fifth Circuit's *Boland* case suggests this result as well. *Boland Marine & Mfg. Co. v. Rihner,* 41 F.3d 997 (5th Cir. 1995). Boland was not a bankruptcy-related case; it involved administrative proceedings under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 *et seq.*, and whether survivors of a deceased longshore worker were entitled to benefits. An administrative law judge ("ALJ"), in issuing an award of partial benefits to the survivors, had ruled that a government fund should be required to reimburse the survivors' attorney's fees and costs, pursuant to 33 U.S.C.

§ 926, since a certain government employee had acted unreasonably with respect to the claim. However, this attorney's fee award of the ALJ was reversed on an appeal to the so-called Benefits Review Board, since 33 U.S.C. § 926 only gives *courts* having jurisdiction of these claims the power to assess attorney's fees, not administrative agencies. The Benefits Review Board further ordered that the former employer should have to pay the survivors' attorney's fees under a different statutory provision. On further appeal at the Fifth Circuit, the appellant/employer argued, *inter alia*, that the government employee who had acted unreasonably should have alternatively been required to reimburse the survivors' attorney's fees under Rule 11. Note that the LHWCA provides that the Federal Rules of Civil Procedure apply in proceedings under the LHWCA "in any situation not provided for or controlled . . . by any statute, executive order, or regulation." *Id.* at 1004. The Fifth Circuit in *Boland* declined to assess Rule 11 sanctions, holding that, where there was a more specific *statute* that provided a remedy for attorney's fees reimbursement in a limited set of situations, Rule 11 had no application.

The *Boland* case is not entirely dispositive of the case at bar. *Boland*, of course, involved administrative proceedings under Title 33, and a statute addressed when the Federal Rules of Civil Procedure applied in those administrative proceedings and when they did not. However, there is language in *Boland* and in

Supreme Court authority cited therein that this court finds relevant. Specifically, the court suggested in *Boland* that statutes that work as exceptions to the American Rule, and shift fees from one party to another—*i.e.,* impose an English system loser pay rule—indicate a Congressional intent in this area and there is a suggestion that Rule 11, in these situations, should only apply where the governing statute does not apply to actors under its literal terms. *Id.* at 1004-05 (noting that "*Alyeska Pipeline* seems to indicate that when a Congressional statute sets out the framework for the award of attorney's fees, courts should look to the statutory framework alone to determine whether sanctions should be awarded"). The Fifth Circuit, in further addressing the notion that a court, despite a specific statute, likely always has the inherent ability to sanction offensive conduct, further suggested that a "court should invoke its inherent power to award attorneys fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Id.* at 1005.

This court believes that Section 303(i) is a statute that Congress intended to entirely govern reimbursement of attorney's fees and sanctions in the context of a court determining whether an involuntary petition was improperly filed. Rule 9011 should only be deemed relevant in an involuntary context if there is unavailability of Section 303(i) by its literal terms—such as in

-22-

a situation where a petitioner's *attorney* acts with improper purpose (since Section 303(i) technically does not permit for a sanction against a petitioner's attorney).

Thus, this puts the court in the situation of deciding whether we have a situation in Commonwealth where Section 303(i) does not apply to actors by its literal terms.  This is not the case here.  Section 303(i) does not apply to the non-Jordan Petitioning Creditors only because the court made it not apply by virtue of the October 12th Bond Order.  This court's intent, with the October 12th Bond Order, should be rather obvious to all concerned:  it was to exonerate all but Jordan, with regard to damages, if the Petitioning Creditors promptly opted to withdraw from the involuntary petition.  The court did not intend to leave a "loophole" for alternative forms of sanctions.  This court declines to allow Commonwealth to make a backdoor attempt at sanctions against the non-Jordan Petitioning Creditors when this court explicitly exercised its discretion to bar Section 303(i) damages against these parties and meant to leave no loophole. Moreover, this court is convinced from attachments to the responsive pleadings related to the Rule 9011 Motion that Commonwealth is using the Rule 9011 Motion as a sword and not a shield.  The Rule 9011 Motion does not appear to this court to be about seeking a sanction for improper conduct—to deter this kind of conduct in the future and protect the integrity of the legal

tribunal. Rather it seems as though Commonwealth is annoyed by
the court's October 12th Bond Order, because Commonwealth had the
grand plan of getting an offsetting attorney's fee award against
each of the Petitioning Creditors, so that Commonwealth would
have amounts it could use to setoff against amounts Commonwealth
might owe to each Petitioning Creditor. Commonwealth (or Mr.
Poock) has had what appears to be a completely irrational
reaction to this court's October 12th Bond Order. Instead of
being gleeful that now the war (the bankruptcy case) is over,
Commonwealth and/or Poock seem to want to keep the war going.
Commonwealth has invited this court (on at least three occasions
noted earlier) to essentially undo the October 12th Bond Order
and let the Petitioning Creditors "opt back in" if they want.
This is unbelievably irrational that an alleged debtor would
rather resume an involuntary case than be deprived of a Rule 11
sanction against a petitioning creditor. This alone suggests to
the court that Commonwealth's motives are suspect. Commonwealth
has the opportunity to ask this court for reimbursement from the
Jordan Trusts of all of its reasonable fees and costs and
potentially have consequential and punitive damages paid to it by
the Jordan Trusts (if bad faith is established). Yet,
Commonwealth wants Rule 11 sanctions against others so badly that
it is willing to let Commonwealth be hurled back into the abyss
of bankruptcy, rather than be deprived of the right to fight for

-24-

Rule 11 sanctions. The court is reminded of the old sports cliche about "snatching defeat from the jaws of victory."

In summary, this court concludes that Rule 9011 sanctions against the Petitioning Creditors will not be considered by this court. Consideration of Rule 9011 relief would circumvent the intent of the October 12th Bond Order. The alleged debtor could have appealed the October 12th Bond Order and it chose not to do so. The case law that this court considers persuasive suggests that Section 303(i) is the statute intended to deal with inappropriately filed involuntary petitions. Rule 9011 would only be applicable in a context where Section 303(i) is not available by its literal terms with regard to a bad actor. There is no such situation in the case at bar. Section 303(i) applied by its literal terms to all the Petitioning Creditors, who are one and the same as the respondents in the Rule 9011 Motion. The court exempted the non-Jordan Petitioning Creditors from Section 303(i) by design, in exercising its discretion. The court intended to leave no loophole for Rule 9011 sanctions in the October 12th Bond Order. To the extent necessary, this court now exercises its discretion under Rule 9011 to rule that it will issue no Rule 9011 sanctions against the non-Jordan Petitioning Creditors, and it will consider relief against the Jordan Trusts only in the context of the pending Section 303(i) Motion.

B.   **Other Legal and Equitable Arguments.**

Various other arguments have been raised by the parties such as untimeliness of the Rule 11 Motion, "due process" implications to both parties, and (relatedly) justifiable reliance on the terms of the October 12th Bond Order.  With respect to untimeliness of the Rule 11 Motion raised by the Petitioning Creditors, this court believes this is technically a "nonstarter."  The United States Supreme Court has held that district courts may enforce Rule 11 even after a plaintiff has filed a notice of dismissal. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("a voluntary dismissal does not expunge the Rule 11 violation.  . . . In our view, nothing in the language of . . . Rule 11 . . . . terminates a district court's authority to impose sanctions after such a dismissal.").  Thus, the fact that the involuntary petition has been dismissed does not bear on the timeliness of the Rule 11 Motion.  ". . . [I]t is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.'"  *Id.* at 398.

However, with respect to the Petitioning Creditors' argument in regard to due process and justifiable reliance, this court agrees with the notion that opting out Petitioning Creditors relied on the October 12th Bond Order—specifically relied on the

safe harbor created thereunder. They relinquished substantive rights based on that order (*i.e.,* chose to walk away from their right to pursue the involuntary petition). *See, e.g., Mirant Americas Energy Marketing, L.P. v. Kern Oil & Refining Co. (In re Mirant Corp.)*, 310 B.R. 548, 561 (Bankr. N.D. Tex. 2004). Parties are entitled to rely on final orders of courts, and correction or clarification of an order to elaborate on the court's intent may not alter the substantive rights of a party who has relied on an order to its detriment. *Id.* On the other hand, with respect to Commonwealth, the court is not persuaded there has been any denial of due process. Commonwealth filed a motion to reconsider the October 12th Bond Order, never making any arguments about wanting to pursue Rule 9011 sanctions. Upon denial of the motion to reconsider, Commonwealth could have appealed the October 12th Bond Order and, on appeal, this court's ruling would have been reviewed by higher courts under an abuse of discretion standard. Commonwealth waived that right of appeal, and instead chose to pursue the Rule 9011 Motion strategy. Commonwealth, therefore, has no legitimate claim of lack of due process in the present context. More importantly, Commonwealth has no substantive rights implicated with the Rule 11 Motion. As previously stated, Rule 11 is about deterring bad conduct. It does not give any party a substantive right to attorney's fees, costs, or other damages. It is about policing

-27-

bad conduct.  Therefore,

IT IS ORDERED, ADJUDGED, AND DECREED that the Rule 9011
Motion is DENIED.

###END OF ORDER###